# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

MARYBETH DAVIS, )
)
      Plaintiff, )
)
v. ) Case No. CIV-13-1248-M
)
AMERICAN TAEKWONDO )
ASSOCIATION, INC., )
)
      Defendant. )

## ORDER

Before the Court is Defendant American Taekwondo Association, Inc.'s ("ATA") Motion to Dismiss Counts 1, 3, 4, & 5 of Plaintiff's Complaint with Brief in Support ("Mtn. to Dis."), filed January 27, 2014. On March 3, 2014, plaintiff filed her response, and on March 13, 2014, ATA filed its reply. Based on the parties' submissions the Court makes its determination.

I.    Background

On November 25, 2013, plaintiff filed the instant action against ATA alleging (1) Intentional Breach of Contract[1], (2) Breach of Contract, (3) Intentional Interference with Contracts and Business Expectancies ("intentional interference"), (4) Breach of the Duty of Good Faith and Fair Dealing[2], and (5) Defamation. On April 23, 2009, plaintiff entered into an ATA Club License Agreement ("License Agreement") for ATA School 2980, located in the eastern portion of Norman, Oklahoma ("East Norman School"). Ver. Compl. ¶ 8. On January 1,

---

[1] Both parties, in their briefs addressing ATA's Motion to Dismiss, address count 1 of plaintiff's Verified Complaint as a "tortious breach of the duty of good faith and fair dealing," i.e. bad faith claim.

[2] In count 4 of plaintiff's Verified Complaint, plaintiff alleges a breach of good faith and fair dealing. In this Order, the Court will address this claim as a breach of the duty of good faith and fair dealing.

1

2012, plaintiff entered into a License Agreement for ATA School 3229, located in Edmond, Oklahoma ("Edmond School"). Ver. Compl. ¶ 9.

On or around August 10, 2012, the District Court of Cleveland County, Oklahoma, issued a search warrant related to plaintiff's East Norman School. Ver. Compl. ¶ 12. The search warrant related to an investigation into Mark Hale, another ATA licensee, who owned the Norman West ATA School and had previously been employed at plaintiff's East Norman School. *Id.* On or around August 17, 2012, ATA communicated to plaintiff by email that it understood that she was not a part of the criminal investigation, but terminated plaintiff's ATA License Club Agreement two days later. Ver. Compl. ¶ 13. Plaintiff alleges that ATA removed her schools from its website and communicated to parents of students at plaintiff's schools that her License Agreements had been terminated due to plaintiff being involved in criminal activity related to drugs. Ver. Compl. ¶¶ 14-15.

Plaintiff alleges that prior to the termination of the License Agreements, "she had entered into agreements for the sale of two of her locations." Ver. Compl. ¶ 16. Plaintiff further alleges that ATA, while knowing plaintiff was not the subject of a criminal investigation, advised the buyers of the Edmond School to distance themselves from plaintiff, and communicated to the buyer of the East Norman School that "Davis' schools would probably be shut down and that [it] would be in his best interest to wait until that happened so that he could purchase the territory for only the license fee." Ver. Compl. ¶¶ 19-18.

While ATA eventually modified its termination of plaintiff's License Agreements to suspensions,[3] plaintiff alleges that ATA has continued to display unjustified malice against her, enrollment at her schools have significantly decreased, students have breached tuition

---

[3] The suspensions of plaintiff's License Agreements were lifted in October of 2012.

agreements, her income has been negatively impacted, and she has closed the East Norman School and reduced the days and hours of the Edmond School. Further, plaintiff alleges the prospective buyers breached their buyer agreements for both of her schools.

ATA has now moved this Court to dismiss plaintiff's claims of intentional breach of contract, intentional interference, breach of good faith and fair dealing, and defamation, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

II.	Standard for Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotations and citations omitted). "While the 12(b)(6)

standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III. Discussion

    A. Intentional Breach of Contract and the Breach of the Duty of Good Faith and Fair Dealing

Under Oklahoma law,

> [e]very contract … contains an implied duty of good faith and fair dealing. In cases involving "ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability." In the "proper case," however, punitive damages may be sought. The "proper case" requires that a special relationship exist between the parties. Oklahoma courts have found such a special relationship in only very limited circumstances, most notably between an insurer and insured.

*Combs v. Shelter Mut. Ins. Co.*, 551 F.3d 991, 998-999 (10th Cir. 2008) (internal citations omitted). "The Oklahoma Supreme Court has expressed its reluctance to extend tort recovery for bad faith beyond the insurance field…." *Hitch Enters., Inc. v. Cimarex Energy Co.*, 859 F. Supp. 2d 1248, 1263 (W.D. Okla. 2012). The limited circumstances in which Oklahoma courts have found a special relationship exists outside of the insurance context include: where there was an issue of fact as to not only if defendant breached a construction contract, but also committed the tort of deceit to accomplish it, *see EKE Builders, Inc. v. Quail Bluff Assocs.*, 714 P.2d 604 (Okla. Civ. App. 1985); where a bank intentionally dishonored its customer's checks, *see Beshara v. S. Nat'l. Bank*, 928 P.2d 280 (Okla. 1996); and, based on the circumstances, where a surety

4

breaches its duty of good faith and fair dealing, *see Worldlogics Corp. v. Chatham Reinsurance Corp.*, 108 P.3d 5 (Okla. Civ. App. 2004).

In addition to a special relationship, plaintiff asserts that Oklahoma courts have found that the tortious breach of the duty of good faith and fair dealing can occur "where a contracting party's actions are 'intentional, malicious, and in reckless and wanton disregard.'" Plt.'s Resp. to Mtn. to Dis. at 4 (*citing Beshara*, 928 P.2d at 288). Defendant contends that the *Beshara* court only found that "[w]hen the factual situation warrants, an action for a breach of contract may also give rise to a tort action for [bad faith]." Def.'s Reply at 4 (*citing Beshara* at 291, n. 31).

Having carefully reviewed plaintiff's Verified Complaint, presuming all of plaintiff's factual allegations are true and construing them in the light most favorable to plaintiff, the Court finds that plaintiff has not alleged sufficient facts to show that a special relationship exists, or that the factual situation warrants a claim for the tortious breach of the duty of good faith and fair dealing. Plaintiff signed License Agreements with defendant for the use of defendant's Songahm curriculum and logos at plaintiff's schools. Defendant initially terminated the agreements and later moderated the terminations to suspensions, which were ultimately lifted. Plaintiff further alleges that during the time her License Agreements were terminated/suspended, and after, defendant engaged in conduct designed to "cause her harm and run her out of business and the ATA system." Ver. Compl. ¶ 22. While these alleged facts may rise to the level of showing defendant may have breached its contract with plaintiff, they do not demonstrate that plaintiff and defendant had a special relationship, or rise to the level that would warrant a claim for the tortious breach of the duty of good faith and fair dealing.

Further, in addition to bringing a claim for the tortious breach of the duty of good faith and fair dealing, plaintiff has brought an independent claim against ATA alleging a breach of the

5

ordinary duty of good faith and fair dealing. This duty is inherent in every contract and any breach of this duty is addressed in a claim for breach of contract. Since plaintiff has also alleged a claim for breach of contract against ATA, plaintiff is unable to independently bring a claim for the ordinary breach of the duty of good faith and fair dealing.[4] Accordingly, plaintiff's claims for Intentional Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing should be dismissed.

    B.    <u>Defamation</u>

ATA contends that plaintiff's defamation claim is time barred. In Oklahoma a cause of action for defamation must be brought within one year of accruing. Okla. Stat. tit. 12, § 95(A)(4). "An action accrues when a litigant can first maintain an action to a successful conclusion." *Digital Design Grp. Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 839 (Okla. 2001). "Oklahoma follows the discovery rule allowing limitation in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *Id*. at 840. ATA asserts that according to plaintiff's Verified Complaint, the time period in which plaintiff alleges the defamation occurred was between August 2012 and October 2012. Plaintiff filed her Verified Complaint on November 25, 2013, and as a result, ATA contends that since plaintiff brought her claims over a year subsequent to the alleged time frame, her defamation claim is barred by the statute of limitations. Further, ATA asserts that plaintiff has failed to provide adequate notice of any actual defamatory communications complained of subsequent to October 2012. Plaintiff contends that "the facts pled in the Complaint raise a reasonable expectation that discovery will reveal evidence that the defamation claim related to certain specific injuries is

---

[4] Any alleged breach of the ordinary duty of good faith and fair dealing by ATA will be addressed through plaintiff's breach of contract claim.

6

timely." Plt.'s Resp. at 9. Plaintiff also asserts that the factual allegations in the Verified Complaint put ATA on notice of her defamation claims.

Having carefully reviewed plaintiff's Verified Complaint, presuming all of plaintiff's factual allegations are true and construing them in the light most favorable to plaintiff, the Court finds that plaintiff has alleged sufficient facts to set forth a plausible claim of defamation. Construing the factual allegations in light most favorable to the plaintiff, the Court finds the allegations plausibly show that defamatory statements were made on or after November 25, 2012, which could have resulted in the loss of a student.[5] Plaintiff alleges that subsequent to the suspensions being lifted, ATA has continued to display unjustified malice and intent to harm and run plaintiff out of business. Ver. Compl. ¶ 22. Further, plaintiff alleges that due to ATA's misconduct enrollment in her schools are down, she has had to close her Norman school and decrease the days and hours of operation for the Edmond School. Ver. Compl. ¶ 23. Accordingly, the Court finds that plaintiff's defamation claim should not be dismissed at this time.

C. <u>Intentional Interference with Contracts and Business Expectancies</u>

In Oklahoma,

> In order to win on the claim of intentional interference with a contract, Plaintiff must show by the weight of the evidence that:
>
>> (1) Plaintiff had a contract with Third Party; (2) Defendant knew or under the circumstances reasonably should have known about the contract; (3) Defendant interfered with the contract or induced the Third Party to breach the contract, or made it impossible for the contract to be performed; (4) Defendant's actions were intentional; (5) Defendant used improper or unfair means; and (6) Plaintiff suffered damages as a direct result of Defendant's actions.

---

[5] While the Court chooses not to dismiss plaintiff's defamation claim at this stage of the litigation, the Court reserves the right to dismiss this claim at a later stage if plaintiff is unable to show facts proving ATA made defamatory statements on or after November 25, 2012.

*Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1166 n. 34 (Okla. 2009). A civil action for the intentional interference with contracts and business expectancies must be brought within two years after the cause of action accrues. Okla. Stat. tit. 12, § 95(A)(3). ATA asserts that plaintiff's intentional interference claim incorporates the same facts as plaintiff's defamation claim and, therefore, is time barred.[6] Plaintiff contends that her intentional interference claim encompasses more than defamatory statements.

Having carefully reviewed plaintiff's Verified Complaint and presuming all of plaintiff's factual allegations are true and construing them in the light most favorable to plaintiff, the Court finds that plaintiff has set forth sufficient facts to establish a plausible intentional interference claim. Plaintiff, in her Verified Complaint, alleges that:

> 16. Prior to the termination of her franchises, Davis had entered into agreements for the sale of her two [school] locations.
>
> 17. Davis had entered into a written agreement with Christopher and Rebecca Johnson for the purchase of the Edmond School.
>
> 18. Michael Dryer planned on purchasing Davis' East Norman School.
>
> 19. Upon information and belief, around the time that ATA terminated the License Agreements with Davis and during a time when ATA knew Davis was not the subject of a criminal investigation, ATA representatives advised the Johnsons to distance themselves from Ms. Davis.
>
> 20. During a time when ATA knew Davis was not the subject of a criminal investigation, ATA advised Michael Dyer, who it knew planned on purchasing Ms. Davis' East Norman school, that Davis' school would probably be shut down and that [it] would be in his best interest to wait until that happened so that he could purchase the territory for only the license fee.

---

[6] The Court has allowed plaintiff's defamation claim to proceed and, for the same reasons, finds plaintiff's intentional interference claim should not be dismissed as time barred.

> 23. As a result of ATA's misconduct and improper, false and misleading communications, the number of students at Ms. Davis' schools has significantly decreased, students have breached their tuition agreements with Davis….
>
> 37. Specifically ATA caused the breach of Davis' agreement to purchase her Edmond School and caused the breach of Davis' tuition agreements with her students. Moreover, ATA maliciously interfered with her business expectancy related to Mr. Dyer's purchase of the Norman School.

Ver. Compl. ¶¶ 16 - 20, 23, & 37. The Court finds these facts are sufficient to show that Davis had agreements with the Johnsons to purchase her Edmond school, tuition agreements with students attending her schools, and an expected business relationship with Michael Dyer to sell her East Norman School. Plaintiff further alleges ATA allegedly was aware of these agreements and relationships, and due to ATA's alleged misconduct and communications with the Johnsons, Dyer, and students, these agreements and relationships were impaired. Finally, as a result of ATA's alleged interference with plaintiff's business agreements and relationships, plaintiff alleges actual damages. Accordingly, the Court finds plaintiff's intentional interference with contracts and business expectancies claim should not be dismissed.

IV.  Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant American Taekwondo Association, Inc.'s Motion to Dismiss Counts 1, 3, 4, & 5 of Plaintiff's Complaint with Brief in Support [docket no. 15] as follows:

1. The Court GRANTS defendant's motion to dismiss as to plaintiff's intentional breach of contract and breach of the duty of good faith and fair dealing claims and DISMISSES plaintiff's intentional breach of contract and breach of good faith and fair dealing claims, and

2. The Court DENIES defendant's motion to dismiss as to plaintiff's intentional interference with contracts and business expectancies and defamation claims.

**IT IS SO ORDERED this 11th day of April, 2014.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE